DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Thomas Frederick, has appealed from a judgment of the Medina County Court of Common Pleas finding him guilty of aggravated burglary. This Court affirms.
 I. {¶ 2} On June 12, 2002, Appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11(A)(1), and one count of disrupting public service, in violation of R.C. 2909.04(A)(1). Appellant waived his right to a trial by jury, and the matter proceeded to a bench trial beginning on January 24, 2003. At the conclusion of the State's case, the trial court granted Appellant's motion for a directed verdict of acquittal on the charge of disrupting public service. The court found Appellant guilty on the remaining charge, aggravated burglary. On March 21, 2003, the court sentenced Appellant to three years in prison.
 {¶ 3} Appellant timely appealed, raising two assignments of error.
 II. FIRST ASSIGNMENT OF ERROR
"The evidence at trial was insufficient to support appellant's aggravated burglary conviction, and that conviction was against the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, Appellant argues that his conviction of aggravated burglary was against the manifest weight of the evidence and was not supported by sufficient evidence. We disagree.
 {¶ 5} As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
 {¶ 6} On review of the sufficiency of the evidence, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Statev. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 50, quotingJackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 7} When a defendant asserts that the conviction is against the manifest weight of the evidence, an appellate court must:
"review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 8} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
R.C. 2911.11(A) provides in pertinent part:
"No person, by force * * * shall trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
 {¶ 9} At trial, the State called five witnesses: Jeannine Coe and Christopher Kovach, two of the police officers who investigated the incident underlying Appellant's conviction; Tammy Roden ("Roden,") and Thomas Schemrich ("Schemrich"), who were present at the scene of the incident; and a physician who treated Schemrich for injuries he sustained during the incident. The State also submitted several photographs of the scene and of injuries sustained by Roden and Schemrich, along with hospital records detailing Schemrich's injuries. Appellant did not call any witnesses or submit any exhibits. Appellant does not challenge the accuracy of any of the evidence.
 {¶ 10} The non-conflicting trial testimony of the State's witnesses provides the following account of the events underlying Appellant's conviction.
 {¶ 11} Appellant and Roden first met at Appellant's place of work, the Lucky Lady Lounge ("the Lounge") in Brunswick Township. The two later began dating. At the beginning of their seven-month relationship, Roden was living with her mother in Brunswick. Appellant stayed overnight at the Brunswick residence two to three nights per week. He was permitted to use a key hidden in the porch light to let himself into the house when Roden was asleep.
 {¶ 12} Six months into the relationship, Roden moved out of her mother's home and into a condominium with Appellant. The couple broke up about a month later, in early May of 2002, and Roden moved back into her mother's home, leaving some of her personal belongings in the condominium. After the breakup, Appellant no longer had permission to use the hidden key to gain entrance to Roden's home.
 {¶ 13} Approximately two weeks after the breakup, on the night of May 23, 2002, Roden went to the Lounge, where Appellant was tending bar. Roden later left the Lounge with Schemrich, an acquaintance of hers. Schemrich drove Roden to her residence and ultimately decided to stay there himself, leaving his car parked on the home's driveway.
 {¶ 14} At 3:00 in the morning, Roden and Schemrich heard two knocks on the front door. Roden ran to the front door, and heard a key being entered into the lock.[1] Roden correctly believed it was Appellant who was trying to enter her home. Appellant then entered the residence, and Roden asked him to leave. Appellant did not respond to this request. He inquired about the car parked on the driveway; Roden refused to disclose the identity of its owner. Roden continued to ask Appellant to leave. Appellant refused to do so.
 {¶ 15} Appellant and Roden ultimately ended up in a back bedroom, engaged in a screaming match. Appellant threw Roden down on a bed and shook her and poked her in the chest. Hearing the commotion, Schemrich entered the back bedroom and told Appellant to stop. Appellant then attacked Schemrich, choking him and attempting to punch him; Schemrich responded with defensive moves. Appellant proceeded to strike Schemrich with a chair and with a crescent wrench. Schemrich sustained injuries to his arm, neck, and head as a result of the attack.
 {¶ 16} After the fracas subsided, Roden asked Schemrich to leave, so that Appellant would calm down. After Schemrich left, Roden once again asked Appellant to leave. He again refused to do so, and stayed for approximately two more hours. During that time, Roden and Appellant discussed their relationship. On cross-examination, Roden agreed that it would be fair to say that Appellant was "pleading with [her] to resume [their] relationship," and that this attempt to reconcile "was his purpose in being there that night." Roden and Schemrich reported the matter to the police later that day.
 {¶ 17} Appellant argues that the State failed to establish that he: (1) committed a trespass "by force, stealth, or deception," or (2) had the "purpose to commit in the structure * * * any criminal offense." We disagree.
 {¶ 18} Appellant's first argument addresses two elements of the crime of aggravated burglary. Appellant maintains that the evidence shows that he had implied permission to enter the home, and that therefore, he neither (a) trespassed, nor (b) used force, stealth, or deception.
 {¶ 19} It may be true that Appellant was allowed to enter the home without prior express permission during his relationship with Roden. However, Roden's uncontroverted trial testimony makes clear that any implied permission to enter her residence ended with the relationship, two weeks prior to the incident giving rise to Appellant's conviction. Moreover, as Roden's trial testimony further reveals, Roden repeatedly requested Appellant to leave her home during the course of the incident, and Appellant persistently refused to honor those requests. Therefore, the evidence supports a finding that Frederick committed a trespass in Roden's home.
 {¶ 20} Furthermore, the evidence supports a finding that Frederick used force to accomplish the trespass. This Court has previously held that "[e]ven the opening of an unlocked door constitutes force sufficient to satisfy the [aggravated burglary] statute." State v. Shirley (Jan. 2, 2002), 9th Dist. No. 20569, at 5. Frederick did not merely open an unsecured door; he applied an extra level of exertion by first opening the lock with a hidden key that he was no longer permitted to use. This action amounts to force within the meaning of R.C. 2911.11(A).
 {¶ 21} Next, Appellant argues that the State failed to establish the mental culpability element of the aggravated burglary statute: that he acted "with purpose to commit in the structure * * * any criminal offense." Appellant points out that, according to Roden's own testimony, he came to her home in the early morning hours of May 24, 2002 with an aim to persuade her to resume their romantic relationship.
 {¶ 22} The fact that Appellant was initially motivated by reconciliatory, rather than criminal, desires, does not nullify the criminal purpose he developed upon learning that Schemrich was in the home. The intent to commit a criminal offense in the structure may be formed at any point during the continuing trespass therein. State v.Fontes (2000), 87 Ohio St.3d 527, syllabus. The record contains ample evidence that, while he was trespassing in Roden's home, Appellant intended to commit the crime of assault against Schemrich. Schemrich and Roden both testified that Appellant punched, choked, and struck Schemrich with both a chair and a crescent wrench.
 {¶ 23} After a thorough review of the record, we are convinced that there was substantial evidence to prove the statutory elements necessary for an aggravated burglary conviction. There is no evidence that the trial court "clearly lost its way" or created a "manifest miscarriage of justice." Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"The trial court erred by failing to consider the lesser include[d] offense of aggravated trespass and finding appellant guilty of that lesser included offense, instead of aggravated burglary."
 {¶ 24} In his second assignment of error, Appellant argues that the trial court erred by: (1) not considering, and (2) not finding Appellant guilty of, the crime of aggravated trespass, rather than aggravated burglary. Appellant maintains that aggravated trespass is a lesser included offense of aggravated burglary.
 {¶ 25} Assuming, for the sake of argument, that aggravated trespass is indeed a lesser included offense of aggravated burglary, Appellant's arguments are nonetheless without merit. First, while only the trial judge knows for certain the deliberations he made in the process of arriving at his decision, the record suggests, if anything, that he did in fact consider the possibility of convicting Appellant of aggravated trespass rather than aggravated burglary. More importantly, the trial court ultimately determined that the evidence presented supports a conviction of aggravated burglary. We have agreed with that determination. Appellant was not entitled to a conviction of aggravated trespass instead. Appellant's second assignment of error is overruled.
 III. {¶ 26} Both of Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Carr, J., and Whitmore, J., concur.
[1] Appellant later told Officers Coe and Kovach that he gained entrance to the house by using the key hidden inside the front porch light.